Good morning, your honors. David Cohen on behalf of Mr. Liu. This is a case, your honor, where the government, as to count four, says in their brief, essentially, that there is no mens rea requirement. Looking at their brief, they say that the knowingly instruction simply related to whether or not counterfeit software was distributed. All that Mr. Liu had to know, according to the instruction, was that software was being distributed to Vertex. He did not need to know, according to the government, that it was counterfeit. With respect to counts one through three, the copyright infringement counts, the government agrees, and agreed below, that the correct standard is that Mr. Liu needed to know that his conduct was illegal. Now, with respect to count four, there's absolutely no doubt, absolutely no doubt, that the instruction that was given did not require the requisite mens rea. We can talk about whether or not there was plain error or not. We think there was not, as to count four and counts one through three, because Mr. McNair Thompson, trial counsel, did submit an instruction talking about how just mere duplication of the copywritten material was not enough. But even if it was plain error, as to counts four, if that was the standard, it was plain error. The Berry case, from his circuit, makes clear that the willfully instruction which was given, as to counts one through three, and the knowingly instruction that was given as to count four, were error. They were error under Berry, and error under Bryan. The error was plain. It affected Mr. Liu's substantial rights, and we have the burden of showing, essentially, that it was harmless under the fourth prong, that it affected the fairness of the proceedings. We think that that's clearly shown by the record here. As to counts one through three, same thing. Berry makes it quite clear that the instruction that was given, the knowingly instruction, was simply error. Judge Ware said, it is not required. That's what he told the jury. He said, it is not required that Mr. Liu know that his conduct was illegal. Well, it was required that Mr. Liu know his conduct was illegal. The government tries to save these instructions by saying, well, there was this one instruction that Judge Ware gave in the middle of the trial, a limiting instruction relating to some 404B evidence relating to a prior lawsuit, at which he says, at some point in that limiting instruction, listen, there's going to be a time when I later tell you what the instructions regarding willfully are to be. But Mr. Liu had to have known, essentially, that his conduct was illegal. The instruction in the middle of the trial did not relate to the elements of the offenses. It was specifically a limiting instruction relating to certain 404B evidence, and Judge Ware said that he was later going to give the jury the instructions, which he later did. The fact that Judge Ware used the word unauthorized as to counts one through three, and that doesn't come from a statute. It doesn't come from a case. The parties didn't agree to it. In fact, the parties agreed that Mr. McNair Thompson suggested language, that mere copying of the software was not enough, was the correct instruction, but that didn't make it into the final instructions. And the issue unauthorized, unauthorized by whom? Unauthorized is not synonymous with illegal. There's absolutely nothing about the word unauthorized that complies with the law as the law, excuse me, as the law should have been given. Am I correct, counsel, in my understanding that the defense did ask for that particular instruction, but when it didn't make it into the final packet of instructions proposed by the court, there was no specific objection raised to the final proposed set of instructions? Your Honor is correct regarding that, and my comment on that is as follows. To the extent that the government is attempting to put in the e-mail and the attachments to the e-mail in support of that particular point, it's not in compliance with Rule 10, and it's not a part of the record. The court should not be relying on those areas that are outside the record. But what is in the record is that Judge Ware said anything else the following morning. Mr. McNair Thompson did not have anything else. On the other hand, as we had pointed out in our briefs, Judge Ware should have conducted a Rule 30 conference. He never did. And if he had conducted a Rule 30 conference, then he would have gone down each one of his draft instructions giving the parties an opportunity to object. The standard under the case law for not conducting a Rule 30 conference is was there prejudice? Our view is there was prejudice here. Well, he said anything else. I'm assuming if counsel had piped up and asked for an opportunity to go through certain instructions that he would then have set aside the time to do it at that time. That may well have been the case. You know, Judge Ware is a very reasonable man. It's not, you know, it's speculation as to what he would have done. I'm simply saying, Your Honor, that he didn't conduct a Rule 30 conference in this case, and it's the judge under the rule who is supposed to conduct the Rule 30 conference. In any event, our point is simply that, yes, if he had conducted it, I'm sure Mr. McNair Thompson would have reiterated his view that he submitted in his submitted instructions. And I think it's very important, as I said, that the government agree with Mr. McNair Thompson about that particular point. Did the instruction as given change at all from the one that was objected to? So what happened, Your Honor, was there was never Mr. McNair Thompson submitted his requested instruction, and there was never a time that that instruction was actually discussed on the record or that Mr. McNair Thompson actually voiced an objection on the record. There was never a time, as I normally experience in trials, where the judge conducted a conference and said, look, these are the instructions that I'm going to give. Does anybody have an objection to any one of these instructions? That never happened in this case. The court reverences, I'm going to send an e-mail to the parties this evening with a couple of corrections, perhaps, as to my draft instructions, which implies to us, looking at the record, that at some previous time he had passed out his draft instructions, but there's nothing in the record that shows when he passed out the previous draft instructions. He also says that the changes that he made in the e-mail were not significant. So I take it from that, that they weren't necessarily changes relating to the elements of the offense. But there's absolutely nothing in the record to show when the draft instructions were handed out or what they were. All there is in the record is Mr. McNair Thompson's submission of his request and the government's agreement to his request.    So I think that's a good way to go about it. I think it's a good way to go about it. So with regard to your ineffective assistance of counsel claims on the statute of limitations issue, I'm sure you know that IAC claims are not ordinarily reviewed on direct appeal for good reason.  Generally, those issues are unripe. Can you briefly address those issues? Yes, Your Honor. And I agree with Your Honor that they're normally not on direct appeal reviewed. We're simply saying, relating to the statute of limitations, and this is as to counts one and two, that the documents that were available in the record, the ones that are in the excerpts of the record, make it clear that the alleged music that was copied in count one and in count two was copied at a time in 2001 that would have made the filing in 2006 of this case outside of the five years. There's an exception in the case, Your Honor, if the ineffective assistance of counsel is clear from the record. For example, in a very simple point, let's say an attorney failed to file a notice of appeal within the currently set time of 14 days. That would be ineffective assistance of counsel that's clear from the record. We would not have to necessarily wait for a 2255 to make that claim. And that's our position with respect to counts one and two. And we've attached the documents upon which we rely in the excerpts of the record, Your Honor. How is it clear with regard to count one in this particular case? It seems to me that the original indictment had a non-exhaustive list of things that were CDs that were songs that were allegedly copyrighted without authorization. And so there appears to be a linkage from the first, I guess the second superseding indictment was what was proceeded to trial. There seems to be a sufficient linkage back to the original indictment. So if we were to reach the merits as to count one, how does that work for you? Well, we've obviously argued that we don't think the linkage is sufficient under I think it was the Palomba case. But regardless of that, the actual date of the filing of the first superseding indictment of the first indictment, I'm sorry, and even if the subsequent indictments were to relate back, the actual date of the first filing we think is past the five years from the documents that we've attached in the excerpt of the record. I'm sorry. All right. Thank you. That would be my response to that particular question. I'd like to reserve the balance of my time in rebuttal if I could, Your Honors. No, that's fine. Okay. Thank you. May it please the Court. Jenny Ellickson for the United States. The defendant has made many arguments on appeal, but he has identified no reversible error. I'd like to start with the jury instruction issue. Despite having several opportunities to do so, the defendant never objected to the district court's instructions on willfully or knowingly. And so under Rule 30, this Court reviews for plain error. And there was no error here. First, I'd like to take issue with the defendant's claim that we conceded that the proper standard is that the conduct, the defendant had to know that his conduct was unlawful. What the district court instructed here was clearly that the defendant had to intentionally infringe on the rights of others, which satisfies Barry's requirement that the defendant have a culpable state of mind. But even if there was error, the error was unlawful. I'm going to assume, counsel, that you'll agree with me. And if you don't agree with that assumption, please let me know. But I'm going to assume that you agree with me that the critical distinction between civil liability and criminal liability for copyright infringement is the willfulness element. And given that willfulness was central to this particular trial, how is it that the Court's instructions are sufficient when the Court never told the jury that they had to find that the defendant's conduct was willful, that he knew that his copying of these various songs and movie at issue was in violation of the law? We believe that the district court did sufficiently instruct the jury on willfulness. Because what the district court instructed is that the jury had to find that the defendant intentionally infringed on the rights of others, that he knew that what he was doing was unauthorized, and he intentionally proceeded to do it anyway. So that's sufficient to convey the culpable state of mind required for willfulness. But even if this Court has concerns about the way the district court formulated its instructions, the error was not plain because willfully has many different meanings depending on the context, and neither the Supreme Court nor this Court has defined willfully in the context of criminal copyright infringement. But in any event, even if the error was plain, there was so much evidence that the defendant was, in fact, aware of copyright law and knew that he was doing it. Let me have you back up for a moment, counsel, because I'm not sure that I understood your answer in terms of how the particular instruction in this case was sufficient. Because in this case, given the pretty overwhelming evidence that there was massive copying going on, it doesn't seem to me that there was a serious dispute that Mr. Gershengorn had with the district court. I mean, the district court said that his customers didn't have the appropriate licenses or they didn't have they weren't essentially the copyright owners. So now getting back to the instructions that the court gave to the jury, essentially the district court said that they had to find defendant willfully infringed, and it defines that, that is, defendant without authorization, duplicated, reproduced, or sold compact discs. That's not the real issue. The issue is whether he knew that the customers weren't the appropriate copyright holders. So what instructions specifically, if you can point me to that, explain to the jury that Mr. Liu had to know his customers didn't have the appropriate licenses? Your Honor, in the instruction that the Court just read, willfully modifies the Court's subsequent definition of infringed. So in that instruction, the Court defines infringed as without authorization he duplicated, reproduced, or sold copyrighted works. And then by putting willfully in front of that, the district court made it clear that the defendant had to act knowingly and intentionally with respect to that entire course of conduct, not just the duplication, reproduction, and sales, but also doing so without authorization, that that had to be intentional. Well, but then that ignores the following instruction, or another instruction that the Court gave later, where he specifically told the jury that an act is done willfully if it's done knowingly and intentionally and not through ignorance, mistake, or accident. So again, that doesn't seem to focus on the mens rea. Your Honor, we believe that read together, these instructions appropriately satisfy the willfully requirement. But even if this Court has concerns about that and believes that the district court should have formulated the instructions differently, any error did not affect the defendant's substantial rights, because there was so much evidence at trial that he knew that he was not authorized to make these copies and that it was illegal to do so, but he did it anyway. There was scratching out of ID numbers on some of the disks, not all of them. Isn't that correct? Yes, that's correct, Your Honor. And what does that do? Those are on the DVDs, not on the CDs? The DVDs had scratched out identifying codes so that you could not tell who identified it. All right. Is there evidence who did the scratching out? The defendant told an investigator in this case, Quilty, who testified during the government's case, that he was familiar with this practice. Furthermore, the DVDs were familiar with the practice. That's my question, was who did it? The evidence shows that the defendant was responsible for the scratching out of the    So, I think it's possible that someone did it at his direction. Okay. Then that takes care of some objective evidence, arguable evidence for the DVDs. What about the CDs? Well, there was evidence for all of them that the defendant took steps to the defendant knew that he was not authorized to do this. So, the CDs, for example, had some of them had a warning label on them that said unauthorized duplication is a violation of applicable laws. That warning was misspelled, which would have put anyone who read it on notice that the CDs were, in fact, unauthorized and infringing products. Furthermore, with respect to the software, the defendant did not use his last name on paperwork, the Federal Express paperwork, to send that software to the company. And, in addition, there's other evidence that leads to the conclusion that he, in fact, knew that this was all both unauthorized and illegal. For example, his company, Super DVD, had a CD title pressing agreement that it gave to customers. This is at ER 1172. This agreement required customers of Super DVD to guarantee that they had possession of the legal copyright of whatever titles they wanted to have pressed. And the customer was supposed to provide all copyright-related legal documents to Super DVD in order for the discs to be replicated. But here, when the agent searched the warehouse, they found no copyright-related legal documents, which shows that Super DVD, although it purported to have this requirement, did not hold its customers to it. Furthermore, the poor quality of the discs on their own would have put anyone who saw them on notice that these were, in fact, infringing and unauthorized. I referred already to the typos on the music CDs. In addition, the software had off-center labels and smudged writing, and the artwork on the DVDs was incomplete. Even the defendant in his opening brief on appeal says with respect to the Beatles 1 CDs that there were, quote, numerous obvious flaws, end quote, in the appearance of the CD, which suggests that, quote, the Beatles 1 CDs found at the Super DVD warehouse were obviously inferior counterfeit copies. That's at page 92 of the appellant's opening brief. So all of this evidence together leaves no doubt that the defendant knew that he was violating the copyright laws and knew that he was making copies without the authorization of the copyright holders. On counts three and four, that relates to the Norton Antivirus software, did, on those counts, was Lew's defense based on willfulness or just that they didn't do it at all? For those discs, he claimed that he was not the person responsible for distributing them. So he didn't argue or raise willfulness objection, or that wasn't his defense. He was just denying that he did it at all. That was his defense with respect to those, yes. So as far as the jury is concerned, if they convicted on those, they were resolving the credibility dispute about whether or not he was responsible. That's probably correct, Your Honor, yes. Okay. I would like to also address the knowingly instruction that the district court gave with respect to count four. This instruction did not transform count four into a strict liability defense. Count four did not require that the defendant had to know that his conduct was unlawful because the mens rea requirement for that provision was knowingly. And the district court properly instructed the jury that they had to find that the defendant knew that he was trafficking in counterfeit labels. That's sufficient. There's no further mens rea required. I'd also quickly like to address the defendant's case that stands for that proposition that knowingly is defined in such a way specifically in the context of counterfeit trafficking, counterfeit goods. Your Honor, I don't have a case on that specifically, but I the Congress's choice of the mens rea requirement knowingly rather than the requirement of willfulness or intentionality conveys that they did not believe knowledge that the law was required. And to the extent the Court believes that any additional there is no it's sufficiently culpable for the defendant to know that he is trafficking in counterfeit labels. There's that sufficiently conveys wrongful conduct, and it does not make it a strict liability defense. With respect to the ineffective assistance of counsel claim, this claim is not ripe, and in any event, the defendant has identified no ineffectiveness by trial counsel, because the statute of limitations defense that he wanted to the defendant now claims counsel should have raised was not a viable defense. But in any event, it's premature for this Court to consider that issue now on direct appeal, because there's no record about why trial counsel made the choices he made. We don't know whether he considered a statute of limitations defense and concluded that it was not likely to succeed for the reasons described in the government's brief. When was the first time that the defendant, Mr. Liu, got notice that DVD movies was going to be an issue in this criminal case? The defendant was put on notice by the original indictment, because the original èappeal to that is that the very title of a copyright infringement had to be a knowledge of copyright infringement, and that he had to have a charge on theっa cylindrical length of disks not limited to the copyrighted work set forth in the indictment. And are you referring to that reference in the forfeiture provision? No, Your Honor. I'm actually referring to the language of Count One. Count One had said that the defendant was being charged with copyright infringement for various works, including, but not limited to, the specific titles listed in that indictment. So the defendant was on notice that he would be, he was being charged with infringement for a course of conduct that was not limited to specific titles, but instead was based on the factual allegations in the indictment. Those allegations wereー Those were music. It was focused on music, did it not? The indictment did use the term music, and that's true, Your Honor. But there's no material difference between music and movies for purposes of this type of infringement. They're both simply copyrighted works that are pressed on disks using very similar procedures. It was part of the same course of conduct that the defendant was engaged at in Super DVD Warehouse in July 2003 when the search warrant was first executed. That's the date in the first indictment, and that date carries through to the second superseding indictment as well. I would also like to briefly address the defendant's claim that the, that there was, that he lacked a sufficient opportunity to object to the jury instructions. The district court gave the defendant numerous opportunities to object. The defendant simply chose not to take them. The district court provided draft instructions to the parties the night before. Those instructions are, in fact, part of the record, appropriately part of the record, because they were added to the district court record during the proceedings for the defendant's motion for bail pending appeal. And the district court gave the parties an opportunity to discuss those instructions with the court the following morning, gave the parties opportunities to object. The defendant chose not to object. With respect to the defendant's other arguments, none of them, the district court indicated on the record that he would be emailing the proposed instructions to the parties. Is there anything in the record indicating as to when that was done? Your Honor, the, the, the email that was subsequently added to the record, which appears in the government supplemental excerpts of record, shows that the district court emailed those instructions out that evening.  The parties convened again the following morning, I believe at 9 o'clock. So the parties did have an opportunity to review those overnight. And during that time, the defendant actually prepared a proposed additional instruction and filed that with the court, showing that the defendant did have an opportunity to review and meaningfully respond to those instructions as he saw fit. With respect to the defendant's other arguments, none of, none of them constitute reversible error either. First, the purchase orders from Vertex were, were admissible under both the residual hearsay exception and as co-conspirator statements. Second, the alleged prosecutorial misconduct amounted to a small misstatement that did not prejudice the defendant or affect his substantial rights. With respect to the sufficiency of the evidence, there was sufficient evidence to support the jury's verdict as to all accounts. And finally, with respect to sentencing, the district court properly adopted the pre-sentence report's calculation of the infringement amount. On the hearsay, when you, you rely, I believe, both on co-conspirator statements and residual hearsay rule. What's the, with respect to the co-conspirator exception, where's the independent corroboration or evidence of a conspiracy? Your Honor, there are several pieces of independent evidence. First, records from Federal Express show that the same tracking number was used on the, the, the packages were in fact shipped. Several of the packages had the same Federal Express tracking number on them. The defendant also testified, sorry, the defendant also told an investigator who testified at trial that he had sold some software to Vertex. And finally, a large amount of counterfeit semantic software was found at Vertex. So all of these pieces of evidence corroborate the sales reflected in the purchase orders and it's sufficient under bourgeois to justify their admission under the co-conspirator exception. All right. I'm happy to answer any other questions the Court may have now or address any issues that come up on rebuttal. Well, this is it. So you're done. You don't have to use the whole amount of time. Okay. Thank you.  We ask this Court to affirm. Your Honor, with respect to the scratching out in count two, the record reflects, and we've cited to it, that the Crouching Tiger, Hidden Dragon DVDs changed hands at least three times. So it was not clear who did the scratching out in count two. Was that referred to the jury? Yeah. In other words, was that an argument or was that in evidence? Both. In other words, is that a factual finding that we should? It was certainly. Let me finish the question, Counsel. You're going to say yes to the wrong thing. Sorry. Okay. Is that something that was submitted for factual resolution by the jury? Yes. I was saying that they found against your client, so. They found against my client, and that's why the point here is that they had to have had the correct instruction unwillfully. If they thought that the only. . . Well, wait a minute. They were instructed, were they not? Even if it wasn't with knowledge, they were at least instructed to know that he did it, that he acted with knowledge that he was making these disks, at least got them that far. So the jury, if they thought all they had to find out is that he intentionally made the copies. Well. And it was presented to them that an issue that they had to resolve or should resolve in arriving at is that the activity that he engaged in. I mean, there is the doctrine that one can avoid reversible error if there is overwhelming evidence, and that's what I'm trying to focus on, as to why that isn't evidence of intentional obfuscation, which the jury resolved against your client. And the reason why I'm saying it, Your Honor, and I'm sorry for interrupting, is because if the jury did not know that they had to determine whether or not there was intentional obfuscation, in other words, if they didn't think that the question before them was intent, was mens rea, if the only thing they were thinking about was did he copy, was he responsible for copying, then they would not have had the occasion to go to the barcode. They wouldn't have thought that was even important. What did they think the willful infringement without authorization, what would they have thought that that was relevant to then? What they thought was, was that, and this is the same instruction essentially they got asked to count for. I know. Right. And I'm not trying to interrupt, Your Honor. I'm saying that what did knowingly modify in the way the instruction was given? What knowingly? No, knowingly in the instruction. Sure. It was willfully, but then it was defined as knowingly later on in the instructions. That's the government's argument. It was subsumed within that. I'm saying what did knowingly modify? What knowingly modified was copying. Knowingly did not, it's very, it's simply not clear from that instruction that what Judge Ware was saying was that he knowingly, that he had to knowingly know, or he knew that it was unauthorized. That's not the way it was modified. Secondly, the question is, what does unauthorized mean? And that was not defined. So what I'm saying is, and also, it's very important because the government is saying, look at all these instructions as a whole. That vicarious liability instruction is also very, very important to look at because the judge said, he's responsible for any copying that anybody else did. So if the jury is trying to determine, and there's no question that there was a lot of copying done, if he's responsible for all the copying that everybody else did, and he's criminally responsible if he himself did any copying, then this whole question about the bar codes, it's not something that actually came to their attention that they decided. But what I'm trying to say, Your Honor, is that even as to that, and Your Honor has put your finger on the most, the evidence of intent that stands out the most, if the jury took a look at it, it's still equivocal. That was how I started off this particular point in the rebuttal. It was still equivocal because it's not clear who actually did the scratching out. The evidence showed that Mr. Allu, for example, sued in order to be paid for those particular DVDs. We did this in detail in our brief. I don't want to use all my time, but all I'm saying is that the evidence was equivocal on that and the other points. When the government says, well, the fact that there were a small number of Beatles DVDs ordered, or there were no documents found relating to authorized copyright, that's all circumstantial evidence. That doesn't mean that Mr. Allu, or there wasn't another way that Mr. Allu might have been told or believed that his clients actually had authorization to copy. Mr. Allu had a language problem. That was clear from the record. The fact that there was a typo or bad language in one of these warnings is not necessarily something that is overwhelming evidence against Mr. Allu. The point is that if the jury were looking at the question of mens rea as they should have been, there was equivocal evidence here, and that's why we don't think it even comes close to harmless error. We think that we've satisfied our burden even under the plain error standard of showing unfairness. With respect to Your Honor's questions about counts three and four, first of all, that's the whole point about the vertex issue. If those documents don't come in, the government relies upon them in their brief, saying the like most favorable to us, they rely on those vertex documents to get past the sufficiency bar. So if the ‑‑ but that wasn't the only piece of the defense. The jury never got ‑‑ yeah, he didn't do it. But then the question is, even if he did, did he have the requisite intent? The record doesn't show that that was not argued. Mr. McNair Thompson did argue that. And even if the court doesn't believe that Mr. McNair Thompson was clear about that in closing, which I think he was, the defense doesn't have to make any argument. The government must prove each element beyond a reasonable doubt as to all counts, counts three and four. The jury had to have been instructed on those elements properly and made those findings. It doesn't follow that just because they determined on counts three and four that he's the one who did it and those documents shouldn't have come in if they hadn't, they wouldn't have made that determination. But it doesn't follow that if they decided that he did it on counts three and four, that they would have decided that he did it with a requisite intent. Why? Because they were not told that he had to have the requisite intent. And I thoroughly disagree when the government gets up here and says that there isn't any case law to support the idea that when there's a severe criminal penalty, that all somebody has to know when the conduct is not in and of itself clearly untoward, that there has to be a mens rea. Every case, Stables, Bryant, Berry, every case that looks at it, it's one thing if it's cocaine. Fine, it's cocaine. But if we're talking about labels, lawful labels, knowingly looking at a label, not knowing that it's counterfeit, how can somebody be convicted and be subject to severe criminal penalties for knowingly distributing a label that happens to be counterfeit? That is contrary to every piece of our law and contrary to what mens rea is required to be in criminal cases. And so, therefore, the government is just simply not accurate about that. With respect to the questions relating to the indictment, the original indictment did not talk about DVDs. So we argued that extensively, and that's why I didn't get into that in response to Judge Nguyen's question earlier. But we believe there was not that adequate connection. And you're out of time. I'm looking at – oh, it's going up. It's going up. It's going up. It's going the other way, Your Honor. All right. Thank you, Your Honors, for all your attention. Thank you both. We appreciate the argument. The case is submitted.
judges: Noonan, Fisher, Nguyen